J-A24034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.Z., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.G., MOTHER | : : : : : : : | |
| | : | No. 1817 EDA 2019 |

Appeal from the Order Dated June 4, 2019
In the Court of Common Pleas of Montgomery County Juvenile Division
at No(s): CP-46-DP-0000066-2019

BEFORE: BENDER, P.J.E., DUBOW, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 13, 2019**

Appellant, C.G. (Mother), appeals from the order entered on June 4, 2019 by the Montgomery County Court of Common Pleas regarding her child, A.Z. (Child), finding it in the best interest of Child to be adjudicated dependent, and legal and physical custody of Child to remain with the Montgomery County Office of Children and Youth (OCY). After careful review, we affirm.

A summary of the relevant facts and procedural history is as follows. On April 25, 2019, OCY filed a dependency petition alleging that Child was without proper parental care and control, and at a proceeding on May 21, 2019, listed originally as an adjudication hearing, Mother, represented by counsel, appeared together with Child's father, G.Z. (Father), who was

_____

* Retired Senior Judge assigned to the Superior Court.

unrepresented. Also present was counsel for the Office of Children and Youth (OCY) and Child's guardian ad litem (GAL). OCY indicated that after Mother and Father failed to comply with three safety plans implemented by OCY, OCY had requested that Child be transferred into its care and custody in order to insure Child's health, safety and welfare.[1] At the May 21, 2019 hearing, the Trial Court initially admitted evidence from OCY, including OCY's Statement of Case Facts and Recommendations; a set of colored photographs of Child's teeth/mouth depicting badly decayed molars; several drug screens for Father; a letter from Children's Hospital of Pennsylvania regarding Child;[2] a drug screen for Mother; and a school health record. N.T., 5/21/19, at 7-10, 15-16. OCY recommended that OCY take custody of Child, and that Child be given an immediate physical and dental examination. *Id*. at 13. Child's GAL agreed with OCY's recommendation, noting however that she had not yet had the opportunity to speak with Child. *Id*. at 15, 33. The Trial Court then heard

_____

[1] On May 13, 2019, OCY received a referral for dental neglect and bodily injury due to Child reporting her teeth were in pain and she was only observed eating soft foods. When offered a school snack, Child would state her teeth were in pain. Child's school notified caseworker of free dental care provided by school, and school notified parents, but parents never took Child to any dental care.

[2] The letter is from a treating pediatrician and states that Mother had Hepatitis C, and expressed concern that it could be transferred to Child; although Mother was provided with authorizations to get Child tested year after year, Mother failed to obtain the testing until shortly before the May 21, 2019 hearing. Child tested negative for Hepatitis C. Exhibit OCY-4; N.T., 5/21/19, at 8-9, 11.

from Mother's counsel, who indicated that he also had exhibits, including two factual narratives prepared and signed by Mother.[3] *Id*. at 16-17. Prior to admitting these documents, which had not yet been provided to OCY, the Trial Court indicated that the posture of the case was in fact that of a shelter care hearing, pursuant to 42 Pa.C.S. § 6332 and stated, to Child's parents, that she was "not going to take testimony today at a shelter care hearing." *Id*. at 18, 22. Nevertheless, at the conclusion of the hearing, the Trial Court admitted into evidence the exhibits offered by Mother, noting "I will admit them as Mom's Exhibit-1 as a pack. So at least they'll be made part of this record." *Id*. at 30. The Trial Court thereupon signed a Shelter Care Order, and legal and physical custody of Child was transferred to OCY. The Trial Court made findings of fact as follows:

> [OCY] became involved with this family due to concerns of the family residing in the Hatfield Motel, a known residence for methamphetamine users. [OCY] received a report that [Child's] family has been residing in the Hatfield Motel for approximately one year. [Mother], [Father], [m]aternal [g]randmother, and Child, 7 years old, all reside in the motel room. Maternal

---

[3] Mother's exhibits included two signed factual narratives; one, entitled "Treatment Details," provided select facts regarding her methadone treatment and Father's methadone treatment. Trial Court 1925(a) opinion (Tr. Ct. Op.) at 3. The other was entitled "Declaration of Facts," and was described by the Trial Court as a counter-narrative to OCY's theory of the case. *Id*. The Trial Court opined that both of Mother's statements corroborated one another, but also that both corroborated key elements of OCY's case for an adjudication of dependency. The Trial Court further noted that Mother's counsel at the May 21, 2019 hearing strategically produced Mother's narratives, enabling Mother to cast the facts in a light most favorable to herself and Father but avoiding cross-examination, which would have been to her disadvantage. *Id*. at 6.

grandmother and Child share an air mattress. Mother is employed as a receptionist at a car dealership. Father is not employed. Mother and Father are current on their rent.

Mother and Father report living between homes and being homeless for the last three years. On March 6, 2019, Mother and Father provided urine screens. Mother tested positive for amphetamines, methamphetamines, opiates, morphine, and methadone. Father tested positive for amphetamines, methamphetamines, methadone, and marijuana. Both parents receive methadone from Northeast Family Center. Mother takes prescribe[d] Adderall, however, Father has not provided information regarding how he receives Adderall. Father continues to test positive for amphetamines. On [March 6, 2019], a Safety Plan was implemented, which stipulated that [m]aternal [g]randmother will supervise parental contact with Child. During after-school hours, when [m]aternal [g]randmother is working, Child is cared for by the hotel housekeeper.

Child attends 1st grade at [School] in Bucks County. The school reports concerns of Child and her belongings strongly smelling like cigarette smoke. Child has missed 17 days of school, and been tardy 13 times this school year. Child has struggled in school, but has recently begun improving. Mother informed the school that Father is unable to help Child with schoolwork, and Mother works full-time. Mother was previously diagnosed with Hepatitis C. Child was to be tested for hepatitis C at 18 months old. On May 8, 2019, Child was tested, and is negative for hepatitis C. Reportedly, Child has never had a dental examination. Child has been reporting that her teeth are in pain, and she has been observed eating only soft foods. On May 8, 2019, OCY caseworker met with parents. Parents stated that they are seeking a residence in Bucks County. Parents were condescending, hostile and argumentative while discussing concerns with caseworker. On May 13, 2019, OCY received notice of Child Protective Services investigation for Bodily Injury and Neglect in regard to reports that Child is in pain due to her teeth, and [ ] only able to eat soft foods…

5/21/19 Trial Court Shelter Care Order at 2. The Trial Court found that foster care placement was the least restrictive placement that meets the needs of

Child, and that there was no less restrictive alternative available, in that there are no kinship resources. *Id*. The Trial Court further ordered OCY to engage in family finding, and authorized any necessary, routine, and/or emergency medical, dental, and/or mental health treatment, evaluation, and/or testing for Child. *Id*.

The next hearing was scheduled for June 4, 2019, and designated as an adjudication hearing. Meanwhile, Child's foster mother scheduled a dental examination for Child within 48 hours of placement, and the examination resulted in a determination that Child was in need of three tooth extractions, two crowns, and a cavity filling. Parents were informed, and requested a second opinion. It was agreed that Mother would provide a list of preferred dentists by the end of the day on May 24th, but Mother provided neither a list nor an appointment date. June 4, 2019 Adjudication.

At the June 4, 2019 hearing, Mother appeared with new counsel and Father also appeared with counsel. OCY introduced an updated Statement of Case Facts and Recommendations, a foster care medical provider form, a hospital letter, new drug screens for Child's parents, doctors' notes, a school attendance improvement plan, and the previously submitted pictures of Child's teeth. N.T., 6/4/19, at 4-9. Child's GAL testified that she remained in agreement with OCY's recommendation for adjudication of dependency and continued removal of Child from her parents' custody. *Id*. at 13. Father's counsel addressed Father's incomplete attempts to date to provide requested prescription information regarding the drugs for which he was testing positive,

and the Trial Court emphasized the importance of providing the requested information. *Id. at 14-17.* Mother's counsel then catalogued the actions taken by Mother that he believed weighed against a determination that OCY had made reasonable efforts prior to the removal of Child – specifically, that Child had received a hepatitis test; Mother had made a dental appointment for Child, although she admitted that she had no funds to pay the dentist; Mother no longer objected to the dental procedure to be performed and now requested only that she be permitted to be present during the oral surgery; and Mother has provided OCY with all requested drug prescription information and her mental health records. *Id*. at 20-21. Mother's counsel presented argument that the main issue in terms of dependency was alleged medical neglect, and asserted that this issue can be "hashed out" in terms of the testimony, citing a video he was prepared to introduce that showed Child chewing on ice, purportedly without evidence that she is in pain. *Id*. at 21. He concluded by stating "that's all I have in terms of taking testimony, I'd lay it all out." *Id*. The Trial Court indicated that it did not need to see the video, in light of "the avalanche of danger" to Child's health, and determined that OCY had met its burden. *Id*. at 25-26.

Near the conclusion of the hearing, Mother's counsel raised an objection to the "initial documents" relating to medical issues, noting the absence of testimony from the underlying medical providers, and indicated that he had not seen letters that OCY was providing. *Id*. at 26. The Trial Court directed OCY to provide counsel with the documents to which he referred, and indicated

that she "did not need testimony today." *Id*. at 27. The hearing concluded after an extended discussion of the terms of visitation for parents going forward.

Following the adjudication hearing, the Trial Court issued an adjudication order finding, by clear and convincing evidence, Child to be a Dependent Child pursuant to 42 Pa.C.S. § 6302. 6/4/19 Order of Adjudication. Pursuant to the Trial Court's Order, Child was to remain in the legal and physical custody of OCY and remain in foster care, with a stated current placement goal to return to parent or guardian within six months. *Id.* The Order specifically authorized OCY authority to consent to routine and/or emergency medical, dental, and or mental health treatment of Child. *Id*. Mother timely filed this appeal.[4]

Mother raises the following issues for our review:

> 1. Did the trial court err in adjudicating the child dependent, without a hearing and without permitting the presentation of any witnesses, testimony, or cross-examination, in violation of Pa. R. Juv. P. 1406(c)?

> 2. Did the trial court err in considering evidence presented by counsel for [OCY] where there were no witnesses testifying and no way of authenticating that evidence?

Mother's Brief[5] at 7 (suggested answers omitted).

---

[4] Mother filed a statement of errors complained of on appeal on June 18, 2019. The Trial Court filed its 1925(a) opinion on July 15, 2019.

[5] By letter dated August 1, 2019, Father's counsel advised that participant Father joined in Mother's brief.

Initially, we note that our standard of review for dependency cases is well-settled:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re EB.*, 83 A.3d 426, 430-31 (Pa. Super. 2013). Section 6302 of the Juvenile Act defines a "dependent child," in relevant part, as a child who is:

> without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk.

42 Pa. C.S. § 6302(1). Proper parental care is defined as "care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re A.B*., 63 A.3d 345, 349 (Pa. Super. 2013).

Section 1406(A) of the Pennsylvania Rules of Juvenile Court Procedure states that "[t]he court shall conduct the adjudicatory hearing in informal but orderly manner," and section 1406(C) states: "Evidence. Each party shall be given the **opportunity** to: (1) introduce evidence; (2) present testimony; and

(3) to cross-examine any witness. Pa.R.J.C.P. 1406(A), (C). (emphasis supplied.)

In its 1925(a) opinion, the Trial Court addressed Mother's first issue in this appeal: that it failed to conduct a proper adjudication hearing, by refusing Mother her right to present witnesses, give testimony, and conduct cross-examination. The Trial Court acknowledged Mother's "hearsay, foundation and confrontation objections" to the updated Statement of Case Facts and Recommendations offered into evidence by OCY at the adjudication hearing. Tr. Ct. Op. at 9. The Trial Court reasoned that those facts were largely duplicative of those presented within the Statement of Case Facts and Recommendations introduced into evidence at the earlier hearing on May 21, 2019. *Id*. The record is clear that no objection was made to the introduction of these facts, nor to any of the other exhibits offered into evidence by OCY at the initial hearing and made part of the record. Mother therefore cannot now object to their admission. *See* Pa.R.E. 103(a)(1)(A). The Trial Court stated "neither Mother, by counsel, nor Father, challenged the exhibits as hearsay. Neither challenged their authenticity or demanded to confront the eyewitnesses whose statements were recounted in the Statement of Facts."[6] Tr. Ct. Op. at 3.

---

[6] The Trial Court further noted that Mother's former counsel did not object to the admission of the first OCY Statement of Facts at the initial hearing, nor did Mother's new counsel request a rehearing on the shelter care order prior to the June 4, 2019 hearing. Had either of these actions occurred, OCY could

Mother contests the evidence introduced by OCY as lacking authentication. However, as stated, Mother failed to object to the bulk of such evidence when introduced at the initial hearing and made part of the record. To the extent that new evidence was introduced by OCY at the adjudication hearing on June 4, 2019 regarding the specifics of the oral surgery required,[7] Mother, by her counsel, acknowledged the need for such procedures at the hearing and there was no longer any dispute as to the facts regarding the dental diagnosis and required treatment. N.T., 6/4/19, at 20. The additional information contained in the updated Statement of Case Facts and Recommendations offered into evidence at the adjudication hearing was a positive report from Child's teacher post-placement regarding her interaction with other students and increased willingness to read aloud in class; this report was irrelevant to the adjudication of dependency, and even if discredited on cross-examination, would have no impact on the dependency determination.

---

have called its case workers to testify in court, and if it proved necessary to produce other witnesses, such as the case worker from Justice Works or the nurse at Child's school, OCY could have requested a continuance and produced them. Tr. Ct. Op. at 13.

[7] The updated Statement of Facts and Recommendations affirmed that the foster mother with whom Child was placed had completed a dental examination for Child within 48 hours of placement and, based on the results of this examination, OCY would request a court order authorizing an oral surgeon to extract three of Child's teeth and install two crowns and a filling, although Mother questioned the need for these procedures. Tr. Ct. Op. at 8.

At the June 4, 2019 adjudication hearing, Child's GAL testified that she agreed with OCY's recommendation that Child be adjudicated dependent, with continued removal from her parents' custody. N.T., 6/4/19, at 13. Mother did not seek to cross-examine Child's GAL. Indeed, Mother did not seek to produce any witnesses to testify at either hearing. The sole evidence offered at the hearing was the video of Child chewing ice cubes, which counsel explained was taken at Child's aunt's house a week before the May 21, 2019 hearing, where the family held an "ice cube challenge," stating that, "[t]he kid is chewing on ice. It doesn't look like a kid in pain to me. So we're contesting that allegation [of dental neglect]." *Id*. at 21. We discern no harm in the Trial Court's decision to decline to view the video, particularly as its purpose was to challenge the conclusion that Child was in immediate danger, and Mother had already acknowledged at the hearing that the oral surgery was necessary. The Trial Court stated:

> Quite frankly, the ice cubes aren't going to – dare I use the phrase – make it or break it for me. I saw the photographs [of Child's teeth and mouth], I saw the Statement of Case Facts. I have listened to argument today, I have accepted the documents to which reference has been made. I understand [Mother's counsel], and I accept that fact that maybe you and, I assume, [Mother] does not admit to all the underlying facts, especially in [the Statement of Case Facts].

*Id*. at 24.

We find no error in the manner in which the Trial Court conducted either the adjudication-turned-shelter care hearing or the subsequent adjudication

hearing, and further find the adjudication of dependency to be proper. The evidence established that Child's acute dental neglect, parents' drug use, and poor housing conditions prevented them from being able to safely care for Child, and the removal of Child from parental care was properly based on their present inability. Counsel waived any argument regarding the admissibility of OCY documents made part of the record during the initial hearing; moveover, Mother's narrative, submitted as an exhibit at the initial hearing, actually corroborated key elements of OCY's case for an adjudication of dependency. Mother was given the opportunity, but neither requested to provide testimony nor offered to present witnesses, and we find no error in the Trial Court's decision not to consider the proffered video. Accordingly, we affirm the order of the Trial Court.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/19